**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(HARRISONBURG DIVISION)**

---------------------------------------------------- x
In re                                             :    Chapter 7
                                                  :
New Market MetalCraft, Inc. [1]                   :    Case No. 11-50983
                                                  :
         Alleged Debtor.                          :
                                                  :
---------------------------------------------------- x

**MOTION OF FIRST BAPTIST CHURCH OF GLENARDEN FOR ENTRY OF AN
ORDER DIRECTING THE APPOINTMENT OF AN INTERIM
CHAPTER 7 TRUSTEE FOR ALLEGED DEBTOR
NEW MARKET METALCRAFT, INC.**

First Baptist Church of Glenarden (the "Church") hereby moves (the "Motion") the United States Bankruptcy Court for the Western District of Virginia (the "Court") for the entry of an order pursuant to sections 303(g) and 363 of chapter 3 of title 11 of the United States Code (the "Bankruptcy Code"): (i) appointing an interim chapter 7 trustee in the bankruptcy case of New Market MetalCraft, Inc. ("NMMC" or the "Alleged Debtor") and (ii) ordering NMMC to adhere to the requirements set forth in section 363 of the Bankruptcy Code. In support of this Motion, the Church relies on the Declaration of Deacon William Gentry (the "Declaration"), a true and correct copy of which is attached hereto as **Exhibit A** and incorporated herein by reference. In further support of this Motion, the Church respectfully states as follows:

---

[1]    The Alleged Debtor in this Involuntary Bankruptcy Case, along with the last four digits of the Alleged Debtor's federal tax identification number, is: New Market MetalCraft, Inc. (2813).

**Jurisdiction and Venue**

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

**Preliminary Statement**

1.      The Church and NMMC have had a long history starting with a construction project and resulting in a twenty-one (21) day arbitration, subsequent litigation over the validity of the arbitration award in favor of the Church and against NMMC and now an appeal pending before the United States Court of Appeal for the Fourth Circuit, which the Church believes is substantively and procedurally improper.  As a result, in order to properly frame the issues before the Court relevant to this Motion, the Motion provides in some detail the procedural history, because the facts are material to the Church's suspicion that NMMC's principals and officers have effectively been buying themselves time in order to permit them to raid NMMC of its assets to the detriment of one of its only creditors, the Church.

2.      NMMC, acting by and through its principals, Ole J. Melkersen ("<u>Ole Melkersen</u>") and W. Gail Melkersen ("<u>Gail Melkersen</u>" and together with Ole Melkersen, the "<u>Melkersens</u>"), husband and wife, has grossly mismanaged its affairs and has breached its fiduciary duties by, among other things, operating its business solely for the benefit of the Melkersens.  In addition, since February 2010, immediately after an arbitrator entered an award in favor of the Church and against NMMC in the amount of $130,518, which was subsequently affirmed by a federal court, NMMC has been liquidating its assets through private sales and private auction sales.  In fact, many of NMMC assets have been auctioned off and/or sold to Ole Melkersen, one of NMMC's principals and its director.  Upon information and belief, Ole Melkersen has not paid cash to NMMC for the assets he purchased.  Instead, Ole Melkersen has "forgiven" certain debts he

**Background**

3.      On July 8, 2011 (the "Petition Date"), the Church (the "Petitioning Creditor")
commenced the above-captioned involuntary chapter 7 bankruptcy case against NMMC (the
"Involuntary Bankruptcy Case").  *See* **Exhibit A**, Declaration at ¶ 4.

4.      NMMC is a corporation organized and existing under the laws of the
Commonwealth of Virginia with its principal place of business located at 9633 Congress Street,
New Market, Virginia (the "Commercial Property").  Id. at ¶ 5.

5.      Ole Melkersen and Gail Melkersen are both members of NMMC, each holding a
50% interest.  Id. at ¶ 6.    Upon information and belief, Gail Melkersen serves as NMMC's
President and Treasurer, and Ole Meklersen is a Director of NMMC.  Id. at ¶ 7.

6.      Upon information and belief, Michael J. Melkersen, the Melkersens' son, serves
as NMMC's Vice President and Secretary and acts as and/or holds himself out as NMMC's
General Counsel.  Id. at ¶ 8.

7.      The Church is a 90 year old non-profit spiritual organization having some 7,000
active members among the Glenarden community of Prince George's County, Maryland.  Id. at ¶
3.

**I.      The Project and Underlying Contract**

8.      In 2000, the Church undertook a large project ("Project") to construct a new
4,000-seat worship facility, spanning over 200,000 square feet in the Upper Marlboro area of

<u>Id</u>. at ¶ 9.  The Project took over seven (7) years to complete, and involved multiple contractors and employees at a cost of over $50 million. <u>Id</u>.

9.      Prior to the Petition Date, NMMC entered into a Miscellaneous Metals work agreement with the Church in connection with the Project.  <u>Id</u>. at ¶ 10.  This original letter of intent from the Church required NMMC to complete miscellaneous metal work, including catwalks, and glass and bronze railings, in return for a lump sum payment of $1,295,530.  <u>Id</u>.  The Church required bonds for any work over $1 million; however, NMMC was not able or willing to provide a bond.  <u>Id</u>.  Therefore, as a concession to NMMC, the Church agreed to eliminate the glass and bronze railings work in the amount of $428,000 from the original scope in order to achieve a base contract under the $1 million threshold.  <u>Id</u>.

10.     On May 28, 2004, the Church and NMMC entered into a formal contract ("<u>Contract</u>").  <u>Id</u>. at ¶ 11.  Pursuant to the Contract, in exchange for the work, the Church was to pay NMMC the sum of $867,530.  <u>Id</u>.  Thereafter, the glass and bronze railings work was added back to the contract scope as a $428,000 lump sum change order returning the total contract price back to the original $1,295,530.  <u>Id</u>.

11.     In accordance with the Contract, the Church made progress payments to NMMC during the course of its work on the Project.  <u>Id</u>. at ¶ 12.

## II.     NMMC's Default; Termination by the Church

12.     After NMMC began fabricating and erecting the catwalk, the Church noted that the work did not conform to the contract documents and became concerned with excessive delays by NMMC.  <u>Id</u>. at ¶ 13.  The defective work included undersized knee braces, non-conforming erection angles, and incomplete welds.  <u>Id</u>.

13.     Although NMMC was repeatedly made aware that the work was deemed defective and instructed to correct the nonconforming work, NMMC failed to do so.  <u>Id</u>. at ¶ 14.

14.     On March 27, 2006 the Church sent NMMC a written Notice of Default giving it forty-eight (48) hours to begin this corrective work.  <u>Id</u>. at ¶ 15.

15.     NMMC acknowledged, in writing, that the work deviated from the plans prepared for the Church by its architect and engineer, but refused to correct the nonconforming work.  <u>Id</u>. at ¶ 16.  As a result, on April 17, 2006, the Church default terminated NMMC for cause.  <u>Id</u>. at ¶ 17.

## III.     Mandatory Arbitration; Award in Favor of the Church

16.     After the Church default-terminated NMMC, a dispute arose about whether NMMC was due additional payment from the Church for the work that NMMC had performed, or whether the Church was entitled to its damages arising out of NMMC's default.  <u>Id</u>. at ¶ 18.

17.     The Contract provided for mandatory mediation to be followed by mandatory arbitration, in the event mediation failed.  <u>Id</u>. at ¶ 19.

18.     After the contractually required mediation failed, on or about May 18, 2009, the Church filed an Arbitration Demand against NMMC.  <u>Id</u>. at ¶ 21.  The Church sought to recover for damages it incurred repairing NMMC's faulty construction, particularly a metal catwalk in the Church's new sanctuary and the costs related to the completion of NMMC's work, and prevailing party attorneys' fees, as provided under the Contract.  <u>Id</u>.  The Church also sought delay damages.  <u>Id</u>.  NMMC answered the Church's Arbitration Demand, denying the Church's claims, and asserting counterclaims against the Church sounding in five counts[2] for damages and a claim for its own attorneys' fees.  <u>Id</u>. at  ¶ 22.

---

[2]     Count I: Breach of Contract, Count II: *Quantum Meruit*/Unjust Enrichment, Count III: Fraud, Count IV: Intentional Copyright Infringement, Count V: Civil Conspiracy.

Id. at ¶ 23.  NMMC filed a preliminary motion to dismiss the Church's demand for arbitration as untimely, claiming that only its claims against the Church had been tolled by a stipulation signed by the parties during the mandatory mediation (the "Tolling Agreement").  Id. at ¶ 24.  The Church opposed NMMC's motion to dismiss, asserting that the Tolling Agreement was not solely drafted for the benefit of any claims NMMC may choose to pursue against the Church, but also tolled limitations as to any claim the Church may have against NMMC.  Id. at ¶ 25.  After the parties submitted their arguments on tolling and limitations to the arbitrator, the arbitrator effectively ruled against NMMC's motion by scheduling the arbitration.  Id. at ¶ 26.

20.    From September 28, 2009 through December 8, 2009, the matter was arbitrated at the offices of the arbitrator in Columbia, Maryland on approximately twenty-one (21) separate days.[3]  Id. at ¶ 27.  The arbitrator declared the hearings closed as of January 5, 2010.  Id. at ¶ 28.

21.    On February 1, 2010, the arbitrator timely made findings and issued his award (the "Award"), a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit B**.  Among the arbitrator's findings was the conclusion that the catwalk NMMC had constructed in the sanctuary was defective.  Exhibit B, Award at 7.  The arbitrator concluded that the Church properly default terminated NMMC, and that the Church suffered damages as a result of NMMC's default, net of the remaining contract balance due NMMC, in the amount of $130,518.00.  Id. at 9, 16.  The arbitrator, however, denied the Church's delay damages claim and determined that, under the circumstances, despite the net positive award to

---

[3]    This including approximately six (6) days of direct examination of the person who ran the project for NMMC, Ole Melkersen, by NMMC's counsel and the Melkersens' son, Michael Melkersen, Esq.

the Church, there was no prevailing party.[4]  Id. at 16-20, 24-25.  With regard to NMMC's counterclaim, the arbitrator found in favor of the Church on all five counts and also denied NMMC's claim for its attorneys' fees.  Id. at 21-25.  The Award required NMMC to pay the Church $130,518.00 within thirty (30) days.  Id. at 25.

## IV.     The Church's Motion to Confirm the Award

22.     On March 4, 2010, having received no payment from NMMC nor any communication from NMMC about making payment arrangements, the Church filed a Miscellaneous Matter with the United States District Court for the District of Maryland (the "Federal District Court") in the form of a "Motion to Confirm Arbitration Award and for Entry of Final Judgment" with exhibits thereto (the "Motion to Confirm").[5]   See Exhibit A, Declaration at ¶ 30; Federal District Court Docket No. 1.

23.     On March 24, 2010, in response to the Motion to Confirm, NMMC filed a four-page pleading entitled, "Answer and Affirmative Defenses" (the "Answer").  See Exhibit A, Declaration at ¶ 31; Federal District Court Docket No. 4.  In its prayer for relief, NMMC asked that the Church's Motion to Confirm be denied.  See Federal District Court Docket No. 4.

24.     On April 7, 2010, the Church responded to NMMC's filing with its "Reply to Defendant's Purported 'Answer and Affirmative Defenses' Plaintiff's Motion to Confirm Arbitration Award and for Entry of Final Judgment" (the "Reply").  See Exhibit A, Declaration at ¶ 32; Federal District Court Docket No. 6.  In its Reply, the Church presented arguments summarized by the following three headings:

---

[4]     While the Church disputes the correctness of the Arbitrator's conclusion that the Church was not a prevailing party, it chose not to either seek a modification or to vacate that portion of the Award.

[5]     The case before the Federal District Court was assigned Case No. 8:10-cv-00543-AW (the "Federal District Court Docket").

A. NMMC has not filed any appropriate response under the Federal Arbitration Act after a properly requested Motion for Confirmation.

B. Even if NMMC's response met the technical requirements of the Federal Arbitration Act, NMMC has not requested any modification or correction of the Arbitrator's award and moreover has not alleged any facts sufficient for the Court to modify the award of the Arbitrator.

C. Additionally, NMMC has not requested that the Court vacate the Arbitrator's award and moreover has not alleged any facts sufficient for the Court to vacate the award of the Arbitrator even if it had asked for such relief.

Id.

25. As detailed in the Church's Reply, NMMC's Answer was procedurally and substantively inadequate, either as a basis for opposing the Church's Motion to Confirm or to be by itself a motion to vacate or modify the Award. In addition, NMMC failed to file, with its Answer or otherwise, any exhibits, affidavits, evidence, or other papers supporting any opposition to the Church's Motion to Confirm or any demand for vacatur or modification by the Federal District Court. The sole filing by NMMC in the Federal District Court was, and remained, its four-page "Answer." See e.g., Federal District Court Docket.

26. On June 10, 2010, more than three (3) months after the issuance of the Award, and over two (2) months after the matter had been fully briefed in the Federal District Court, in order to bring the matter to a head, the Church filed a Request for Hearing on its Motion to Confirm. Exhibit A, Declaration at ¶ 33.

27. The Federal District Court held a telephonic hearing on July 28, 2010, as evidenced by the hearing transcript attached hereto as **Exhibit C**. Counsel for NMMC and the Church had prior notice of and participated in the hearing.

of the Award by submitting an explanation of what had transpired, providing a copy of the Award, and stating that no payment had been made.  <u>Id</u>. at 2.  The Church further argued that NMMC's submission (*i.e.* the "Answer") did not provide "legal grounds in the very narrow area where arbitration can be overturned sufficient for this court to do" anything other than confirm the Award.  <u>Id</u>. at 2-3.  NMMC argued that the Award should not be confirmed for a number of reasons and made a lengthy argument with numerous factual and legal allegations, criticizing the Church's claim, the arbitrator's handling of the arbitration, and the Award.  <u>Id</u>. at 3-10.

29.    After hearing from NMMC, Judge Williams of the Federal District Court noted that NMMC had merely made "self-serving assertions," and that NMMC had not presented any "cognizable bases" for vacating the Award.  <u>Id</u>. at 11.  Judge Williams concluded that in this posture of the case, "the arbitrator may have erred but again, it's not my role at this point to question that."  Focusing on the record before him, Judge Williams explained that:

> A manifest disregard of the law basically says that the arbitrator realized what the law basically says and then decided deliberately and intentionally to ignore or pay no attention to it, and I just don't have anything on this record to suggest that at all.

<u>Id</u>. at 12.

30.    As Judge Williams was issuing his ruling, NMMC's counsel interjected that he was "unaware" of the nature of the telephonic hearing.  He claims it "was [his] understanding that we were going to be scheduling an evidentiary hearing on some of these matters" and requested to make a proffer for the purposes of appeal, <u>id</u>. at 13, to which the Federal District Court responded unfavorably:

> THE COURT:  Well, you have already made your proffer.  And, again, you weren't entitled to a hearing. I just gave you a hearing

to see if you could supplement what you had already presented. What you have presented in the record simply is not sufficient. And I think the plaintiff got it correct that your pleadings are not appropriate, *that maybe you don't quite understand what happens in a petition to confirm, that you've got to show, not necessarily at any evidentiary hearing that I may give you or may not give you, but you've got to show clearly in your pleading that there's some bases under that statute to vacate. You haven't done that.* And I'm not going to give you any hearing to go into or reach some discovery or try to prove these things that you simply have asserted, again, on a self-serving basis. So, I appreciate your efforts.

Id. at 13-14 (emphasis added).

31.     NMMC then orally moved for leave to amend its Answer, stating:

MR. MELKERSEN: I want to make sure it's clear that I am moving that the court grant us leave to amend our answer filed in this case to properly assert all of our allegations, not confirmation of the [A]ward.

Id. at 14.  To which the Federal District Court again responded unfavorably:

THE COURT: Again, I'm not going to repeat myself, what I've just said. I don't think on this record that you have presented a sufficient basis for this court to not confirm.

Id.

32.     There followed a colloquy in which NMMC made an oral motion for leave to amend its Answer, which the Church opposed.  After considering the matter, the Federal District Court denied NMMC's oral motion.  Id.

33.     Then, during a discussion regarding the logistics of filing the Federal District Court's Memorandum Order, NMMC again requested leave to amend, which the Federal District Court denied, as well as denying as improper and untimely NMMC's oral request to file written objections to the granting of the Church's Motion to Confirm.  Id. at 15-16.

34.     At the conclusion of the telephonic hearing, the Federal District Court, by Judge Williams, granted the Church's Motion to Confirm, affirmed the arbitrator's Award, and entered

judgment against NMMC, issuing its Memorandum Opinion and written Order (together, the "<u>Judgment</u>") two days later, true and correct copies of which are attached hereto and incorporated herein by reference as **<u>Exhibit D</u>**.

35.     In its Memorandum Opinion, the Federal District Court recounted that the purpose of the telephonic hearing was "to provide the parties with an opportunity to summarize their arguments in favor of and/or in opposition to the Motion to Confirm . . . ."  Exhibit D, Judgment at 5.  Although NMMC had raised a number of challenges to the Church's Motion to Confirm during the hearing, the Federal District Court held that these assertions were "self-serving" and "bald allegations" without "evidentiary support."  <u>Id</u>. at 6.  The Court further stated NMMC failed to "provide any support for its statute of limitations argument during the hearing."  <u>Id</u>. at 5-6.  For those reasons, and as detailed by the Federal District Court during the hearing and in its Memorandum Opinion, the Church's Motion to Confirm was granted.

## V.     NMMC's Appeal to the United States Court of Appeal for the Fourth Circuit

36.     On August 27, 2010, NMMC filed a Notice of Appeal with respect to the Judgment (the "<u>Appeal</u>"), appealing to the United States Court of Appeal to the Fourth Circuit.[6]

37.     On Appeal, NMCC challenges (i) whether the arbitrator, as opposed to the Federal District Court, was permitted to consider the statute of limitation defense NMMC raised in its motion to dismiss the Church's arbitration demand, (ii) whether the Federal District Court failed to give NMMC advance notice of the nature of the July 28, 2011 telephonic hearing, and (iii) whether the Federal District Court's refusal to grant NMMC leave to amend its pleadings was error.

---

[6]     The Appeal was assigned Docket No. 10-1991 (the "<u>Appellate Docket</u>").

38.     The Church timely filed its brief in opposition to NMMC's Appeal.  Exhibit A, Declaration at ¶ 37.  NMMC opted not to file a reply brief, id. at ¶ 38, and none is required by the applicable rules. Accordingly, briefing in connection with the Appeal is complete.

## VI.     Disposition of NMMC's Assets; Insider Transactions

39.     In connection with the Appeal, the Church and NMMC were required to participate in mandatory mediation.  Exhibit A, Declaration at ¶  39.

40.     During this mediation, which was ultimately unsuccessful, NMMC advised the Church that it had ceased operations and had no assets to satisfy the Award and/or Judgment. Exhibit A, Declaration at ¶ 40.  The Church requested proof of this.  Id. at ¶ 41.  The Church also requested documentation of NMMC's assertion that it had been forced to sell and auction off assets by a bank lender, whose loan to NMMC was in default.  Id.  In response, NMMC made certain financial disclosures to the Church.  Id.

41.     The disclosed information did not show, as NMMC had represented during the mediation, that sales and auctions were forced by a bank lender.  Id.  at ¶ 42.  Instead, the only "lender" disclosed therein was the  financial institution that had provided a home equity line to the Melkersens.  Id.

42.     After reviewing NMMC's inconsistent disclosures and performing its own due-diligence, the Church was not satisfied that NMMC was impecunious.  Id. at ¶ 43.   Based on the information provided to the Church, NMMC had cash on hand, it owned equipment, including vehicles, shop equipment and office equipment, and held an interest in certain lease improvements.  Id. at ¶ 43.  NMMC also held certain account receivables.  Id.  More importantly, if NMMC was already destitute, as it claimed, why was and is it pursuing the Appeal?

43.     The Church also learned through NMMC's financial disclosures that since February 2010, immediately after the arbitrator entered the Award in favor of the Church and against NMMC, NMMC has been liquidating its assets through private sales and private auction sales.  Id. at ¶ 44.  In fact, several of NMMC's assets have been auctioned off and/or sold to Ole Melkersen, one of NMMC's principals and a director.  Id.  Upon information and belief, Ole Melkersen has not paid cash to NMMC for the assets he purchased.  Id. at ¶ 45.  Instead, Ole Melkersen has "forgiven" certain debts he claimed were owed by NMMC to him and his wife. Id.  Among the assets NMMC has been selling off are computers and file cabinets, ostensibly storing business records of NMMC.

44.     The documents provided by NMMC to the Church indicate that Gail Melkersen claims to have issued a line of credit to NMMC; however, no documents were provided indicating that an amount certain was actually loaned to NMMC, and there are serious discrepancies in NMMC's records regarding how much has been paid by NMMC toward any such loan.  Id. at ¶ 46.  There was no documentation of any default by NMMC, other than vague mentions of it.  Id.  The documents provided by NMMC also evidence that NMMC was behind in its rental payments to its landlord, the Melkersens.  However, no lease was ever produced and no history of lease payments was provided.  Id. at ¶ 47.

45.     More recently, the Church has learned that the Melkersens have listed the Commercial Property, which is attached to and part of the Melkersens' residential property (together, the "Complex") for sale.  Id. at ¶ 48.  The asking price is $750,000.00.  Id.

46.     As a result of these suspicious transfers and the fact there is no disinterested third party to oversee NMMC's estate and activities, the appointment of an interim chapter 7 trustee

**Relief Requested**

47.       By this Motion, the Church respectfully requests entry of an order pursuant to

sections 303(g) of the Bankruptcy Code appointing an interim chapter 7 trustee in the

Involuntary Bankruptcy Case of NMMC.  Further, the Church respectfully request entry of an

order pursuant to sections 303(f) and 363 of the Bankruptcy Code requiring NMMC to adhere to

the requirements of section 363 of the Bankruptcy Code until the appointment of a chapter 7

trustee, including, without limitation, requiring notice and a hearing seeking authority to use, sell

or lease property of the estate other than in the ordinary course of business.

**Argument**

**I.       NMMC Is A Proper Debtor Under Section 303(b) Of The Bankruptcy Code**

48.       As a threshold matter, "so as to avoid appointing an interim trustee in a case that

will soon be dismissed," the Court must determine whether there is a reasonable likelihood that

NMMC will eventually be found to be a proper involuntary debtor under section 303 of the

Bankruptcy Code and that an order for relief will be entered.  In re The Ctr. for Mgmt. & Tech.,

Inc., 2007 WL 3197221, at *3 (Bankr. D. Md. Oct. 26, 2007) (citing In re Prof'l Accountants

Referral Svcs., Inc., 142 B.R. 424, 429 (Bankr. D. Colo. 1992)).

49.       Under section 303(b)(1) of the Bankruptcy Code, an involuntary petition may be

commenced "by three or more entities, each of which is either a holder of a claim against such

person that is not contingent as to liability or the subject of a bona fide dispute as to liability or

amount . . . if such noncontingent, undisputed claims aggregate at least $14,425 more than the

value of any lien on the property of the debtor securing such claims held by the holders of such

claims."  11 U.S.C. § 303(b)(1).  Under section 303(b)(2) of the Bankruptcy Code, if there are

ced by one (1)

such holder provided that the holder's claim is noncontingent, undisputed and at least $14,425.

11 U.S.C. § 303(b)(2).

50.    Although the Bankruptcy Code does not define the term "bona fide dispute,"  the

unanimous view of most courts, including the United States Court of Appeals for the Fourth

Circuit, is "that a bona fide dispute requires 'an objective basis for either a factual or a legal

dispute as to the validity of [the] debt.'"  See, e.g., Platinum Financial Services Corp. v. Byrd (In

re Byrd), 357 F.3d 433, 437 (4th Cir. 2004) (citing Matter of Busick, 831 F.2d 745, 750 (7th Cir.

1987) and relying on Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC), 330 F.3d 111,

117-18 (2d Cir. 2003); Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing

Sys., Inc.), 277 F.3d 1057, 1064 (9th Cir. 2002); Subway Equip. Leasing Corp. v. Sims (Matter

of Sims), 994 F.2d 210, 220-21 (5th Cir. 1993); Rimell v. Mark Twain Bank (In re Rimell), 946

F.2d 1363, 1365 (8th Cir. 1991); B.D.W. Assocs., Inc. v. Busy Beaver Bldg. Ctrs., Inc., 865 F.2d

65, 66-67 (3d Cir. 1989); Bartmann v. Maverick Tube Corp., 853 F.2d 1540, 1543-44 (10th Cir.

1988); Booher v. Eastown Auto Co. (In re Eastown Auto Co.), 215 B.R. 960, 965 (B.A.P. 6th

Cir. 1998)).  Stated another way, "a bona fide dispute exists only when there are substantial

factual or legal questions that bear upon the debtor's liability." In re Byrd, 357 F.3d at 437.  "[A]

debtor's subjective beliefs do not give rise to a bona fide dispute." Id. at 440.

51.    In the instant case, the requirements of section 303(b) of the Bankruptcy Code are

satisfied.  First, upon information and belief, based upon a detailed review of documents

provided by NMMC and several Dun & Bradstreet reports regarding the company, and as

detailed in the Declaration, NMMC has fewer than 12 creditors and is not generally paying its

t of the Church's claim.

**A.    The Church's Claim Has Been Reduced To Judgment And The Fact An Appeal Is Pending Does Not Mean A Bona Fide Dispute Exists.**

52.    As discussed above, the Church's "claim" has been reduced to a judgment by the Federal District Court.

53.    While the Church readily admits that the judgment is the subject of a pending appeal, the mere fact that the Appeal is pending does not mean, without more, that a bona fide dispute exists." In re Byrd, 357 F.3d at 437.

54.    Here, although NMMC filed the Appeal, NMMC did not file a motion with either the Federal District Court or the United States Court of Appeals for the Fourth Circuit seeking a stay of the judgment pending the Appeal.

55.    Several courts have held that the pendency of an appeal of an un-stayed judgment by an involuntary debtor does not create a bona fide dispute for purposes of section 303 of the Bankruptcy Code because such a holding would radically alter the long standing enforceability of unstayed judgments.  In re Euro-Am. Lodging Corp., 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007). See also, In re Cohn-Phillips, Ltd., 193 B.R. 757 (Bankr. E.D. Va. 1996); In re Raymark Indus., Inc., 99 B.R. 298 (Bankr. E.D. Pa. 1989).  But see, In re Prisuta, 121 B.R. 474 (Bankr. W.D. Pa. 1990).

56.    However, if this Court is not persuaded by such rulings, the fact that NMMC failed to either present *any* evidence or take *any* affirmative steps provided by law to "dispute"

the Church's claim (*i.e.* the Award) is compelling.  The only steps taken by NMMC have been calculated to delay and obstruct the Church's collection efforts while NMMC dissipates its assets to the favor of its principals.

> **B.      There Can Be No Bona Fide Dispute Because NMMC Failed To Vacate, Modify Or Correct The Award In Accordance With Applicable Law And It Is Now Time Barred From Doing So**

57.     As discussed above and set forth in detail in the briefs that were submitted to the Federal District Court and the United States Court of Appeals for the Fourth Circuit, after a 21 day arbitration a neutral arbitrator found in favor of the Church and against NMMC on all counts and issued the Award.  At no time did NMMC seek to vacate or modify or correct the Award, which is what is required by law if the Award was disputed.  See 9 U.S.C. §§ 11-12. [7] [8]

---

[7]     9 U.S.C. § 11 governs vacating an arbitration award and provides:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> (b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
>
> (c) The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

[8]     9 U.S.C. § 12 governs modifying or correcting an arbitration award and provides:

58.    Instead, after the Church filed the Motion to Confirm with the Federal District Court, NMMC filed a four-page "Answer" in which it admitted and/or denied the individual paragraphs of the Motion to Confirm and asserted two (2) affirmative defenses.  In its Answer, NMMC also made a "demand" for "strict proof", *inter alia*, that NMMC "provided anything less than quality workmanship with respect to its work on the Project" and "any expenses resulted to [sic]" the Church "were self-inflicted as a result of the inexperience of its management team, and the improper termination of NMMC from the Project."  Federal District Court Docket No. 4.

59.    In making these statements, NMMC attempted to convince the Federal District Court that there should be a complete re-trial of all issues already adjudicated by the arbitrator, namely that the Church would bear the burden of proving to the Federal District Court that its termination of NMMC was proper, and that the Church suffered the claimed damages as a result of NMMC's faulty workmanship.  In order to contest or dispute the Award, by law, however, NMMC was required to file a motion to vacate or modify or correct the Award within three (3) months after the Award.  See 9 U.S.C. §§ 11-12. This NMMC failed to do, even though the deficiencies in its "Answer" were explained to NMMC by the Church's counsel.

---

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

60.     Moreover, the ensuing code section states, any motion to modify or correct "*shall*" be accompanied by notices, papers, or affidavits supporting the motion.  9 U.S.C. § 13. NMMC's four-page Answer was filed without any exhibits,[9] and at no time has NMMC supplemented that filing with any notices, papers, or affidavits that could support a motion to vacate or modify or correct the Award.

61.     It should also be noted that the time-frame within which to file a motion to vacate or modify or correct the Award did not expire until *weeks* after the Church filed its Reply to NMMC's Answer.  Accordingly, if NMMC did in fact dispute the Award but its counsel did not understand how to do so procedurally, all its counsel had to do was read the Church's Reply, which provided NMMC with a veritable roadmap for how NMMC could properly file a motion to vacate or modify or correct the Award, and take the necessary steps.  NMMC chose not to do so. [10]

62.     The Fourth Circuit has adopted a rule of strict adherence to the three-month deadline for filing a motion to vacate, even in the face of a motion to confirm an award, which may be filed for up to one (1) year after the award.  See Taylor v. Nelson, 788 F.2d 200, 225 (4th Cir. 1986) ("once the three-month period has expired, an attempt to vacate an arbitration award could not be made even in opposition to a later motion to confirm.").  See also, Choice Hotels Int'l, Inc. v. Shiv Hospitality, LLC, 491 F.3d 171 (4th Cir. 2007) (finding the three-month period within which to file a motion to vacate an arbitration award expires independent of the procedural posture of any request by the other side to confirm the award).

---

[9]     Not the least of which was the tolling agreement that was the apparent linchpin of NMMC's Statute of Limitations argument and one of the issues raised in the Appeal.

[10]    Even if NMMC had filed a timely motion to vacate, which it did not, the Federal District Court would not retry the case as NMMC presumed, but rather would only consider whether to vacate the award. *Taylor*, 788 F.2d at 225.

63.     Even if there existed some extraordinary circumstance for NMMC to seek leave to file a motion to vacate months after the time for doing so had expired, NMMC never articulated it.  NMMC was and has been represented by the same counsel throughout, who is the son of the Melkersens and upon information and belief also an officer of NMMC, and who at all times relevant has operated his law practice out of the same address as NMMC.  NMMC could not and cannot now, therefore, claim it was unaware of which rules and laws applied to the confirmation of an arbitration award, or any challenges thereto, because they were cited and explained in both the Church's Motion to Confirm and its Reply.

64.     Furthermore, in the Appeal, NMMC's counsel repeatedly and erroneously refers to the Answer filed with the Federal District Court as an effort to "vacate the Arbitration Award" and the actions of the Federal District Court as a "refus[al]  to vacate or modify the Arbitrator's Award."  *See* Appellate Docket No. 21, 23.  NMMC, however, never requested vacatur of the arbitrator's Award until the hearing on the Church's Motion to Confirm, *some six months after* the Award, more than three months after NMMC was required to do so by law.

65.     The Federal District Court properly refused to allow NMMC a "do over" with respect to the binding arbitration decision, and it refused to allow NMMC to challenge the arbitrator's findings based solely on rather attenuated, and in some instances, scandalous, allegations that were unsupported by any record or evidence.  The Federal District Court acknowledged that NMMC "made a number of assertions" that the Award was procured by corruption, fraud, or undue means, but explained, "[T]hat's all they are at this point.  They are assertions."  Exhibit C, Transcript at 10-12.  The Federal District Court further explained that NMMC's claims during the hearing of evident partiality, or misconduct by the arbitrator, or the arbitrator exceeding his authority are unsupported by the record, and that the Federal District

Id.

66.     Finding a bona dispute exists now under section 303 of the Bankruptcy Code, over a year after the Award and almost one year after the Federal District Court confirmed the Award and entered Judgment "would scuttle the spirit of deference that courts have always used in reviewing arbitral awards."  Remmy v. PaineWebber, Inc., 32 F.3d 143, 144 (4th Cir. 1994). As the United States Court of Appeal for the Fourth Circuit explained in Remmy, reviewing an arbitral award should not allow a "second bite at the apple" to a party dissatisfied with the outcome below:

> The statutory grounds for vacatur permit challenges on sufficiently improper conduct in the course of the proceedings; they do not permit rejection of an arbitral award based on disagreement with the particular result the arbitrators reached. Accordingly, parties may not seek a "second bite at the apple" simply because they desire a different outcome. "To permit such attempts would transform a binding process into a purely advisory one."

Id. at 146 (internal citations omitted).  Cf.  Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 236-7 (4th Cir. 2006) (Where a motion to vacate the award was filed, and the record showed the arbitrator "revised the governing arbitration agreement on the basis of his own 'personal notions of right and wrong,' and imposed a limitations period on the parties that they had specifically rejected", such that the award "contravene[d] the plain and unambiguous terms of the governing arbitration agreement," this Court held that the arbitrator's award constituted manifest disregard for the law and was properly vacated).

67.     Based on the foregoing, NMMC is a proper involuntary debtor under section 303(b) of the Bankruptcy Code and this Motion is ripe for consideration.

## II.   NMMC's' Conduct Demands The Appointment Of An Interim Chapter 7 Trustee.

68.    Although section 303(f) generally permits a debtor in an involuntary chapter 7 proceeding to continue to operate its business and "use, acquire or dispose of property as if an involuntary case concerning the debtor had not been commenced," 11 U.S.C. § 303(f), this is not an absolute right.   Indeed, if it is shown that a debtor "may attempt to abscond with assets, dispose of them at less than their fair market value, or dismantle his business, all to the detriment of [its] creditors," the appointment of an interim trustee is both necessary and appropriate.  In re DiLorenzo, 161 B.R. 752, 754 (Bankr. S.D.N.Y. 1993).

69.    To provide protection to creditors, section 303(g) of the Bankruptcy Code provides:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. § 303(g).  In essence, this section provides the Court authority to appoint an interim trustee during the period between the date of commencement of an involuntary case and the date of any order for relief therein—a period commonly referred to as the "gap" period.  See, e.g., In re James Plaza Joint Venture, 62 B.R. 959 (Bankr. S.D. Tex. 1986) (appointing an interim trustee in an involuntary chapter 7 petition under the section 303(g) standard); In re Tradex Swiss AG, 2007 WL 4374438 (Bankr. D. Mass. Dec. 12, 2007) (same).

70.    For the reasons discussed in detail above, particularly the unexplained sale of assets at public and private auction, many of which were sold to Ole Melkersen, an insider, purportedly in exchange for debt-forgiveness, appointment of an interim chapter 7 trustee over

NMMC is necessary and appropriate.  In particular, the Melkersens have, among other things, (i) grossly mismanaged NMMC and repeatedly acted contrary to the interests of its  creditors, and (ii) manipulated NMMC for their own benefit, in clear breach of its fiduciary duties.  The Melkersens have done nothing more than engage in delay tactics since day one so that they may raid NMMC for their own benefit.  Accordingly, cause exists for the appointment of an interim chapter 7 trustee under section 303(g) of the Bankruptcy Code.

71.    NMMC has a limited number of employees, all of whom are, upon information and belief, insiders, and limited, if any, operations.  NMMC has very few, if any, creditors other than the Church and possibly the Melkersens. NMMC's principals are, and have been, perpetrating a fraud on it and its creditors, since at least February 2010, if not earlier.  This Motion, seeking the appointment of an interim trustee, is to ensure that there is a neutral third party overseeing the limited business operations, if any, of NMMC and preserving what may be left of NMMC's property, namely any cash and equipment it may have on hand.  Appointment of an interim trustee is intended to prevent further loss, not to do harm.

72.    The appointment of an interim trustee should allow NMMC to continue whatever business it is conducting as usual until such time as the Court is able to rule on the involuntary petition and enter an order for relief.  In the interim, NMMC's creditors will have the comfort of knowing that an independent third party is overseeing NMMC's operations, if any, and preventing the fire sale of assets likely to continue to occur in the absence of such an appointment.

**III.    The Court Should Order NMMC To Adhere To The Requirements For The Use, Sale Or Lease Of Property In Section 363 Of The Bankruptcy Code, Pending The Appointment Of A Chapter 11 Trustee**

73.    Section 303(f) of the Bankruptcy Code provides that "except to the extent the court orders otherwise, and until an order of relief in the case, any business of the debtor may

For the reasons discussed above—namely, NMMC's efforts to sell and dispose of its assets at auctions and sales for less than fair market price to a certain insider, as well as the Melkersens' gross mismanagement of NMMC — the Church requests entry of an order requiring NMMC to adhere to the requirements set forth in section 363 of the Bankruptcy Code and not enter into any transaction out of the ordinary course of business absent notice, hearing and court approval.  The Church further submits that the sale of substantially all of NMMC's assets and the Complex, even if the business is winding down, is not "ordinary."

### Notice

74.     In accordance with Rule 2001, notice of this Motion shall be provided to:  (a) the Office of the United States Trustee, (b) the Alleged Debtor, (c) Ole Melkersen; (d) Gail Melkersen; and (e) Michael Melkersen.  Because NMMC has not filed its schedule of assets and liabilities, its statements of financial affairs, or a creditor matrix, the Church submits that service to the Notice Parties is sufficient and adequate notice under the circumstances of this Involuntary Bankruptcy Case.

WHEREFORE, for the foregoing reasons, the Church respectfully requests that the Court enter an order in favor of the Church granting (a) the relief sought herein and (b) any further relief the Court may deem just and proper.

Dated:    July 8, 2011

Respectfully submitted,

FIRST BAPTIST CHURCH OF GLENARDEN

By Counsel

/s/ W. Stephen Scott
W. Stephen Scott (VSB No. 14301)
**SCOTT KRONER, PLC**
418 East Water Street
P.O. Box 2737
Charlottesville, Virginia 22902
Telephone: (434) 296-2161
E-Mail:  wscott@scottkroner.com

and

Daniel E. Toomey (VSB No. 30939)
**DUANE MORRIS LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776-5291
Facsimile:  (202) 478-2873
E-Mail:  detoomey@duanemorris.com